IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. ANTONIO MENDEZ-MORENO, Defendant. | ORDER AND MEMORANDUM DECISION Case No. 1:12-cr-28-TC |

Defendant Antonio Mendez-Moreno is accused of possessing methamphetamine with the intent to distribute. He has moved for an order suppressing incriminating statements he made to law enforcement officers after being arrested on March 5, 2012. Mr. Mendez-Moreno argues that when his hands were handcuffed behind his back, he was placed in a great deal of pain due to an old shoulder injury, causing him to make involuntary statements.

The court held an evidentiary hearing on September 28, 2012, during which credibility became an issue. On some principal issues, Mr. Mendez-Moreno's testimony contradicted the testimony of the officers. Having evaluated the demeanor of the witnesses and the contents of their testimony, for reasons set forth below the court finds that the incriminating statements were made voluntarily. Accordingly, Mr. Mendez-Moreno's Motion to Suppress Statements (Docket No. 34) is DENIED.

**FACTUAL BACKGROUND**

The facts are taken from testimony and evidence admitted during the evidentiary hearing (See Tr. of Evidentiary Hr'g, Sep. 28, 2012, ECF No. 73 [hereinafter "Hr'g Tr."].) During the hearing, three law enforcement officers testified: Detective Steve Haney from the Weber County

Sheriff's Office; Agent Matt Jensen from the Weber County Sheriff's Office; and Agent Blake Anderson from the Federal Bureau of Investigation, Salt Lake City Division. Mr. Mendez-Moreno also testified.

## The Traffic Stop and Arrest

On the morning of March 5, 2012, Agent Jensen received a tip from a confidential informant about a shipment of methamphetamine in Ogden, Utah. The confidential informant told Agent Jensen that a car would leave a motel in the West Haven area, and inside the car would be three Hispanic individuals (an older male, an older female, and a younger male) and a large amount of methamphetamine. (Hr'g Tr. at 6, 20–21.)

Agent Jensen contacted Detective Haney and Sergeant Zacardi and asked them to use a marked police car and stop the car for a traffic violation—a ruse to protect the confidential informant's identity.[1] When Mr. Mendez-Moreno, his adult son, and a female relative left the motel in a white Ford Focus, Detective Haney followed and soon pulled the car over after it failed to signal for a left turn. Detective Haney asked Mr. Mendez-Moreno (who was the driver), to get out of the car so they could speak. Mr. Mendez-Moreno did so, and for safety reasons, the two walked a few feet to stand at the back of the car. According to Detective Haney, Mr. Mendez-Moreno did not show any difficulty getting out of the car or walking, nor did Detective Haney see any physical abnormalities or notable injuries. (Hr'g Tr. at 9, 17.)

Detective Haney started to tell Mr. Mendez-Moreno the reason for the traffic stop, but he sensed there was a language barrier. When Detective Haney asked Mr. Mendez-Moreno if he

---

[1] Mr. Mendez-Moreno does not challenge the legality of the traffic stop.

spoke English, the response was "poquito" (meaning "very little"). Detective Haney then asked Mr. Mendez-Moreno's son to get out of the car and act as an ad hoc translator. Detective Haney then told Mr. Mendez-Moreno that he had been stopped for not signaling. Continuing the ruse to protect the confidential informant, Detective Haney told Mr. Mendez-Moreno that there had been reports of a car like his driving erratically in the area. As stated by Detective Haney at the hearing, he then asked a number of questions to reinforce the idea that he had pulled over Mr. Mendez-Moreno on suspicion of erratic driving:

> I [Detective Haney] asked if there were any health problems that he [Mr. Mendez-Moreno] was having. He said no. I asked him if he was taking any type of prescription medications that would lead him to driving erratically. He again said no. Then I asked him if there was anything inside of the vehicle such as prescription drugs or any other drugs that would lead him to drive erratically. He again said no.

(Hr'g Tr. at 11.) Detective Haney then asked for consent to search the car, which Mr. Mendez-Moreno granted. During their five-minute-long conversation, Mr. Mendez-Moreno was not handcuffed, and Detective Haney did not see any signs of pain or discomfort, nor did Mr. Mendez-Moreno complain of any pain or discomfort. (Id. at 12.) When Sergeant Zacardi searched the car, he found a bag with methamphetamine inside of it. Detective Haney then arrested Mr. Mendez-Moreno and handcuffed his hands behind his back. (Id. at 13–14.)

Mr. Mendez-Moreno contends that the handcuffing forced his right arm into a very painful position. At the hearing, Mr. Mendez-Moreno testified that about fifteen years ago he was injured in the shoulder and the back by two shotgun blasts. As a result, he states he is in poor health, has had to undergo multiple surgeries, suffers from nerve damage, cannot move his left foot, cannot walk without a limp, and has limited range of motion in his right arm. (Id. at

3

55–59.) Mr. Mendez-Moreno testified at the hearing that when was handcuffed, he told Detective Haney in Spanish that "it hurt." (Id. at 60.) Detective Haney responded that he didn't understand, so Mr. Mendez-Moreno's son spoke to Detective Haney in English. The content of that conversation is not clear, except that the word "handicapped" was used. (Id.) After the conversation ended, Detective Haney did not adjust the handcuffs. (Id. 60–61.)

After about fifteen minutes of standing in handcuffs, Mr. Mendez-Moreno was placed in the front passenger seat of Agent Jensen's police truck. Agent Jensen and Agent Anderson also got in the police truck, one in the driver's seat, and one in the backseat. (Id. at 25, 32–33, 40.) Agent Anderson, who is fluent in Spanish, advised Mr. Mendez-Moreno of his Miranda rights in Spanish, inquired if he understood those rights, and asked if he wanted to talk. (Id. at 41–42, 65.) Mr. Mendez-Moreno said he had no questions and agreed to talk. (Id. at 42, 65.) Then, using Agent Anderson as translator, Agent Jensen questioned Mr. Mendez-Moreno for a short time period that lasted somewhere between five and fifteen minutes. (Id. at 32, 43, 63.) Agent Jensen testified that Mr. Mendez-Moreno never appeared to be uncomfortable, nor did it seem he was suffering from a physical impairment. (Id. at 26, 32.) Likewise, Agent Anderson testified that Mr. Mendez-Moreno never said anything about being uncomfortable or in pain, and did not appear be in any degree of discomfort. (Id. at 43, 47.) Moreover, Agent Anderson said the conversation proceeded at a normal pace, that Mr. Mendez-Moreno did not hesitate when answering, never withdrew his consent, and did not request a lawyer. (Id. at 44, 49–50.)

In contrast, Mr. Mendez-Moreno said that he was even more uncomfortable while seated in the police truck with his hands behind his back and had to shift his position to relieve the pressure on his right arm. (Id. at 62–63.) Mr. Mendez-Moreno testified that he was suffering a

4

pain level of 8 on a scale of 1 to 10. (Id. at 63.) He stated that he was so distracted by the pain that he would sometimes not answer questions, and that the pain was so great all he wanted to do was speed up the interview. Mr. Mendez-Moreno also said that he told Agent Anderson that the handcuffs were bothering him, which Agent Anderson ignored. (Id. at 64.)

### Reconciling Conflicting Testimony

For the reasons below, the court finds that Mr. Mendez-Moreno was not a credible witness. Accordingly, the court adopts the version of events presented by Detective Haney, Agent Jensen, and Agent Anderson. The court notes that Mr. Mendez-Moreno, who is being prosecuted for a federal crime, has an inherent motive to protect himself. More importantly, Mr. Mendez-Moreno's testimony was less than credible due to its delivery and content.

First, the court cannot accept that Mr. Mendez-Moreno walked with a limp when he was stopped and arrested on March 5th, 2012. The officers, including Detective Haney who witnessed Mr. Mendez-Moreno get out of his car and walk to back of the car, said that Mr. Mendez-Moreno never showed signs of physical impairment or discomfort. Mr. Mendez-Moreno argues that he cannot walk without a limp. But the only evidence before the court supporting that assertion is his own demonstration of the walk in court, his own testimony, and his own argument in his briefs. When Mr. Mendez-Moreno took the stand at the evidentiary hearing, he walked with a pronounced limp. It was so pronounced that it would be inconceivable for the officers to fail to notice such an impairment when they questioned and arrested Mr. Mendez-Moreno—unless the officers were lying or willfully blind. The only document supporting the existence of the limp is a picture of an abdominal scar, which does not prove Mr. Mendez-Moreno was injured in the back or that he must limp when walking. He submitted no

5

physician's reports, no records of surgery, and no direct evidence of the entry wound.  Other than his own self-serving statements and an ambiguous abdominal scar, there is no independent evidence showing that he must walk with a limp.

      Second, and for similar reasons, the court cannot accept that Mr. Mendez-Moreno suffered significant pain from the handcuffs when he was arrested on March 5th, 2012.  Mr. Mendez-Moreno argues that he suffered from pain so great, it registered an 8 on a scale of 1 to 10.  Mr. Mendez-Moreno testified that when he was first handcuffed, he complained in Spanish to Detective Haney, prompting a conversation in English between Detective Haney and Mr. Mendez-Moreno's son in which the word "handicapped" was used.  Moreover, Mr. Mendez-Moreno contends that he complained to Agent Anderson that the handcuffs were bothering him.  But the officers testified that none of them saw any signs of pain or discomfort.  Agent Anderson specifically stated that Mr. Mendez-Moreno never complained to him.  There are no physician's reports showing Mr. Mendez-Moreno suffers from a limited range of motion.  Other than Mr. Mendez-Moreno's own self-serving statements, a picture of a scar on his shoulder, and an ambiguous conversation that used the word "handicapped," there is no independent evidence showing that he suffers immense pain when his arm is drawn behind his back.  At the time Mr. Mendez-Moreno made his incriminating statements, he had not been in handcuffs longer than a half an hour.  He was not subjected to any type of overbearing treatment.  There is nothing before the court that independently supports Mr. Mendez-Moreno's contention that he has limited range of motion in his right arm.  Defense counsel has argued that Mr. Mendez-Moreno is an uneducated, inarticulate man who is averse to complaint and was unfamiliar with police authorities, suggesting that Mr. Mendez-Moreno was suffering greatly but did not cry out for

relief because of his stoic nature.  If that were the case, and it were true that his suffering caused him to sometimes not respond to questions, then Mr. Anderson testified falsely when he said that Mr. Mendez-Moreno answered questions without hesitation and that the conversation in the police truck proceeded at a regular pace.  But that conclusion that is not supported by any hint of wrongdoing by the officers.

The court is left with a case where it is Mr. Mendez-Moreno's word against the word of the officers.  To find that Mr. Mendez-Moreno was telling the truth about his physical handicap or complaints of pain, the court would need to find that all the officers testified falsely or were willfully blind.  But that conclusion is not borne out by the facts.  Nothing in the record indicates that the officers had a motive to lie.  And nothing about their testimony or the facts to which they testified was inflamed.  When testifying, their demeanor was open and honest.  In contrast, Mr. Mendez-Moreno's testimony was self-contradictory, as he sometimes indicated he was injured on the right, sometimes on the left, sometimes on his back, and sometimes near his lower back or bottom.  Based on the demeanor of the witnesses and the evidence before the court, the court credits the officers' testimony and discredits Mr. Mendez-Moreno's testimony.  Cf. Harris v. Dugger, 874 F.2d 756, 759, 762 (11th Cir. 1989) (affirming a trial court's determination that law enforcement officers were more credible than the defendant who alleged he had been painfully handcuffed and seated in a way that made his statement involuntary).

## **ANALYSIS**

In light of the court's factual findings, the court rejects Mr. Mendez-Moreno's argument that he made the incriminating statements involuntarily.  A defendant may waive his Fifth Amendment rights—in such circumstances, any incriminating statements made by the defendant

may be admissible if the waiver was made "voluntarily, knowingly, and intelligently." United States v. Morris, 287 F.3d 985, 988 (10th Cir. 2002) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)). When examining voluntariness, factors considered by courts include the intelligence and education of the defendant, whether he was advised of his constitutional rights, the length of detention, the prolonged nature of the questioning, and whether the individual was physically punished. Short, 947 F.2d at 1449.

Mr. Mendez-Moreno alleges his confession was involuntary because of the way he was handcuffed, because of the way he was forced to sit, and because police ignored his pleas of discomfort and pain—but as noted above the court does not find those contentions credible. Instead, the court finds that the officers' version of events is far more credible. Furthermore, there are no allegations that any of the officers threatened, beat, abused, or manipulated Mr. Mendez-Moreno to extract a confession from him. There are no allegations that the officers engaged in wrongful conduct of any kind. The officers have stated that Mr. Mendez-Moreno answered questions at a normal pace and did not hesitate, that he did not complain of discomfort or pain, and that he never asked for a lawyer. And at the hearing, in response to questions by the Government's counsel, Mr. Mendez-Moreno himself admitted to being read his Miranda rights, agreeing to talk to the officers, and giving truthful answers:

> Q: He [Agent Anderson] read you [Mr. Mendez-Moreno] your rights?
> A: Yes. How do you call it? Yeah, the rights that they tell you.
> Q: You agreed to talk to him?
> A: Yes.
> Q: And you gave him answers?
> A: Yes.
> Q: The answers were truthful?
> A: Yes.

(Hr'g Tr. at 65.) Although Mr. Mendez-Moreno's low level of education could cast some doubt on whether he knowingly waived his rights, the other factors militate in favor of finding a voluntary waiver, including the short duration of the interrogation (under fifteen minutes), the fact that Mr. Mendez-Moreno had not been detained for very long (less than half an hour), the fact that the court does not find credible Mr. Mendez-Moreno's contention that he was in great pain, and the fact that the court did not find convincing evidence of any coercion or wrongdoing on the part of the law enforcement authorities. By examining the totality of the circumstances, the court finds that the Government has shown by a preponderance of the evidence that Mr. Mendez-Moreno gave the incriminating statements voluntarily after a knowing waiver of his Fifth Amendment rights.

**ORDER**

For the foregoing reasons, Defendant's Motion to Suppress Statements (Docket No. 34) is DENIED. So ORDERED this 4th day of January, 2013.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge